**IN THE COURT OF APPEALS OF IOWA**

No. 22-0097
Filed December 21, 2022


**NATHANIEL MILLER, JR.,**
     Plaintiff-Appellant,

**vs.**

**DRAKE UNIVERSITY and TREMELL MURPHY,**
     Defendants-Appellees.
_____

     Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


     A plaintiff appeals the district court ruling granting the defendant's motion

for summary judgment. **AFFIRMED.**


     Shayla L. McCormally, Maureen C. Cosgrove, and Kolby P. Warren of

McCormally & Cosgrove, P.L.L.C., Des Moines, and Daniel T. Craig of McEldrew

Young Purtell Merritt, Philadelphia, Pennsylvania, for appellant.

     Jason M. Craig and Rebecca E. Reif of Ahlers & Cooney, P.C., Des Moines,

for appellee.


     Heard by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Nathaniel Miller appeals the district court's grant of summary judgment in favor of Drake University (Drake). Miller claims the court should have provided more time for electronic discovery. He also asserts the court wrongly found there were no genuine issues of material fact. We find Miller failed to properly move for a continuance to conduct more discovery. We also determine summary judgment was appropriate. We affirm.

## I.      Background Facts & Proceedings

On August 31, 2019, a group of Drake students hosted a party at an off-campus house.[1] The home's renters included several Drake basketball student athletes. Tremell Murphy, a renter and student athlete, was handling a pistol when it discharged, sending a bullet through a wall that struck Miller in the head. Miller survived the shooting but suffered a brain injury as a result. Two police officers responded to a report that someone had either fallen or had been shot. Individuals at the scene reported Miller had fallen and hit his head. One of the officers noticed the bullet hole in the wall. A bullet casing was also located at the scene.

Miller filed a petition on June 10, 2020, alleging Drake, Murphy, and the owners of the home were liable for his injuries. Miller claimed, "Upon information and belief, [a] basketball coach told [d]efendant Murphy to deny involvement in Mr. Miller's injuries." Furthermore, "[b]ecause [d]efendant Murphy, under the authority of a Drake University basketball coach, delayed in reporting what actually

---

[1] The home was owned by Front Door Investors, LLC. While initially named as a defendant, Front Door Investors, LLC is not a party to this appeal and was voluntarily dismissed from the proceedings by Miller.

happened to Mr. Miller, [h]ospital staff was delayed in providing proper medical care to Mr. Miller."

Discovery commenced following the filing of the petition, the extent of which is in dispute. The parties exchanged initial disclosures and some interrogatories. Miller deposed Drake's chief information technology officer, who explained how a search of Drake's electronic information could be conducted. Since the filing of the petition, Miller sought more electronically stored information (ESI) than Drake believed was necessary. Drake's counsel filed an affidavit explaining that Drake had provided over 1300 pages of documents to Miller.

On June 2, 2021, members of the corporation that owned the property where the shooting occurred and the Peterson Family Living Trust moved for summary judgment.[2] Miller responded, asking for more time to respond and a continuance of the summary judgment hearing. Miller also included a "Request for Motion Regarding E-Discovery." Drake moved for summary judgment on June 22. Miller filed his resistance to the motion on July 8 but did not ask for a continuance of the summary judgment hearing. The day before the summary judgment hearing, counsel for Miller filed an affidavit explaining that there were still outstanding issues that needed to be resolved through discovery. A combined hearing was held on August 27, addressing Miller's e-discovery requests as well as the defendants' motions for summary judgment.

---

[2] Ross Peterson and D. Ann Peterson are members of Front Door Investors, LLC, but the Peterson Family Living Trust is not a member. None of the three are parties to this appeal.

The district court granted Drake's motion for summary judgment on October 29. That same day, the court entered its order regarding e-discovery, finding the matter to be moot. On November 15, Miller timely moved to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). The clerk's office rejected the motion the following day, noting a lack of signature. Miller's counsel re-filed the motion with an added signature within ten minutes of the rejection notice. The court denied the motion. Miller appeals.

## II. Standard of Review

We review motions for summary judgment for the correction of errors at law. *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. 'We view the record in the light most favorable to the nonmoving party.'" *Id.* (citations omitted).

A court's decision on whether to grant a continuance on a motion for summary judgment is reviewed for an abuse of discretion. *Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 302 (Iowa 1996).

## III. Jurisdictional Issues

Before turning to the merits of the case, we must first address two jurisdictional questions. The supreme court, on its own motion, requested the parties to address the issues. "First, the appeal may be interlocutory and require permission from this court to proceed because the case remains pending against defendant [Murphy]." Second, questions exist over the timeliness of Miller's appeal because his re-filed rule 1.904(2) motion to enlarge or amend was one day late.

After supplemental briefing by the parties, the supreme court ordered the jurisdictional issues to be addressed with the appeal and transferred the appeal to this court.

### A.    Interlocutory Appeal

A party may appeal as a matter of right from "[a]ll final orders and judgments of the district court."  Iowa R. App. P. 6.103(1).  The necessary corollary is that parties generally cannot appeal non-final judgments.  However, "[a]ny party aggrieved by an interlocutory ruling or order of the district court may apply to the supreme court for permission to appeal in advance of final judgment."  Iowa R. App. P. 6.104(1).  Therefore, we are presented with two questions.  First, is the district court's order a final judgment?  Second, if it is not final, should permission to appeal be granted?

Both parties assert the present appeal is not a final judgment.  We agree. "Whether a complete dismissal of one defendant in a multi-defendant action is final for purposes of appeal turns on the question of whether the interest of the dismissed defendant is severable from the claims against other defendants." *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 735 (Iowa 2008).  If the interests are severable, then the judgment is final as to the dismissed defendant. *Id.*  Drake, in its answer, asserted a defense of comparative fault.  Comparative fault apportions the degree of liability between the named defendants. *Id.*  As such, the claims are not severable, and the judgment is not final. *Id.*

The question now turns on whether to grant Miller an appeal.

> Because it is often difficult to determine whether an order is final, this court has routinely held that appeals improvidently filed as a matter of right may be treated as applications for interlocutory

appeal. As a general rule, however, we sparingly grant interlocutory appeals on this basis. The main factor in determining whether such an interlocutory appeal should be granted is whether consideration of the issue would serve the "interest of sound and efficient judicial administration . . . ."

*Id.* at 735–36 (ellipsis in original) (internal citations omitted). Because the remaining defendant's liability remains at issue, we believe granting the appeal is in the interest of judicial efficiency. *Id.* We grant the interlocutory appeal.

### B. Timeliness

The question remains whether this court has jurisdiction to hear the case. A party must file a "notice of appeal . . . within thirty days after the filing of the final order or judgment." Iowa R. App. P. 6.101(1)(b). However, if a party files a 1.904(2) motion to amend or enlarge, the notice of appeal must be filed within thirty days after the filing of the ruling on that motion. *Id.* This issue arose because Miller's 1.904(2) motion, which was originally timely filed,[3] was rejected by the clerk because it lacked a signature in the motion itself. Miller was notified of the rejection on November 16, and refiled the motion—this time including the signature—ten minutes later. The motion was technically a day late. Because of that, the motion did not toll the thirty days to file a notice of appeal after the court's judgment. As a result, Miller's notice of appeal filed on January 13 was untimely.

A late notice of appeal generally divests this court of subject matter jurisdiction. *Evenson v. Winnebago Indus., Inc.*, 922 N.W.2d 335, 337 (Iowa

---

[3] Rule 1.904(2) motions must be filed within fifteen days of the final judgment. *See* Iowa R. Civ. P. 1.904(3). The district court ruled on the motion for summary judgment on October 29. Miller initially filed the rule 1.904 motion on November 15. While fifteen days after October 29 falls on November 13, that was a Saturday. As such, the motion was due by the following Monday, the 15th. *See* Iowa R. Civ. P. 1.1801; Iowa Code § 4.1(34) (2020).

2019). However at times an untimely filing may relate back to a timely one that was rejected by the clerk's office because of minor errors. Our supreme court, in *Jacobs v. Iowa Department of Transportation*, held:

> We conclude that for purposes of meeting a deadline, a filing may relate back to the original date it was received by the electronic document management system (EDMS) when the filing party demonstrates the following three conditions are met. First, the party submitted an electronic document that was received by EDMS prior to the deadline and was otherwise proper except for minor errors in the electronic cover sheet. Second, the proposed filing was returned by the clerk's office after the deadline because of these minor errors. Third, the party promptly resubmitted the filing after correcting the errors.

887 N.W.2d 590, 591 (Iowa 2016).

The third prong of the *Jacobs* test is met here—the clerk rejected the motion because of a missing signature, which was rectified by Miller's counsel minutes later. It is nearly impossible for Miller to have responded more promptly. However, Drake points out, the facts are somewhat distinct from those found in *Jacobs*. First, unlike in *Jacobs*, the error was not in a cover sheet, but in the motion itself. Moreover, the missing signature may not be a "minor error." *See Jones v. Great River Med. Ctr.*, No. 17-1646, 2018 WL 4360983, at *3 (Iowa Ct. App. Sept. 12, 2018) (holding that a missing signature on a petition was not a minor error); *but see Toney v. Parker*, 958 N.W.2d 202, 208 (Iowa 2021) (noting the clerk could have instructed counsel to rectify a missing signature in a memorandum rather than rejecting it).

That said, several factors suggest the late filing relates back to the timely one. First, as explained in *Jones*, our case law suggests the requirement to include a signature traditionally was "merely directory," and such an error did not deprive

the court of jurisdiction. 2018 WL 4360983, at *3 (collecting cases); *see also Jacobs*, 887 N.W.2d at 599 (explaining that the interim rules related to electronic filing "were designed 'to continue the court practices that governed paper filing, not to change them'" (citation omitted)). Similarly, we only require substantial compliance with filing rules. *Toney*, 958 N.W.2d at 208. *Toney* held that *Jacobs* applied to errors on a resistance to a motion for summary judgment that failed to redact a social security number in its appendix, expanding *Jacobs*'s scope.[4] *Id.* "Moreover, we 'normally strive to resolve disputes on their merits.'" *Jacobs*, 887 N.W.2d at 599 (citation omitted). And we are disinclined to punish a party for technical mistakes unless "the correction of such mistakes would materially prejudice the rights of the defendant." *Toney*, 958 N.W.2d at 210 (citation omitted). Drake does not oppose the resolution of this appeal on the merits. As a result, we determine the late-filed rule 1.904(2) motion relates back to the timely filed motion, Miller's notice of appeal was timely, and we have jurisdiction to hear this case.

## IV. Discovery

Miller contends he was entitled to further e-discovery prior to the court granting Drake's motion for summary judgment. In support of that contention, Miller points to several rules that generally permit the discovery of electronic information. *See, e.g.*, Iowa Rs. Civ. P. 1.500(1)(2), 1.501, 1.503(1)(a), and 1.512. In response, Drake asserts Miller failed to timely request additional time for

---

[4] We acknowledge that unlike the present case, the deadline to file a resistance to summary judgment is non-jurisdictional. *Toney*, 958 N.W.2d at 208. That said, *Toney* does indicate that the holding in *Jacobs* is not limited to cover sheets. *See id.*

discovery prior to the summary judgment proceedings and, even if he had, additional time would not have been warranted.

We agree with Drake that Miller failed to properly ask the district court for additional time to conduct discovery. Non-moving parties to a summary judgment motion ordinarily should have time to conduct discovery prior to the motion. *Bitner*, 549 N.W.2d at 301. "However, there is no requirement . . . that summary judgment not be entered until all discovery is completed." *Id.* at 302. Instead, Iowa Rule of Civil Procedure 1.981(6) states:

> Should it appear from the affidavits of a party opposing the motion that the party for reasons stated cannot present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This section "compromises an 'out' for a party who legitimately needs additional time to gather facts essential to justify its opposition when faced by a summary judgment motion." *Bitner*, 549 N.W.2d at 301.

A party must properly invoke the rule to obtain its benefit. "It is clear that under rule [1.981(6)] it is incumbent upon the resister to set forth *by affidavit* the reasons why it cannot proffer evidentiary affidavits and what additional factual information is needed to resist the motion." *Id.* (emphasis added). Indeed, a failure to file an affidavit "is sufficient grounds to reject the claim that the opportunity for discovery was inadequate." *Id.* at 302.

Miller's counsel filed an affidavit which asked the court to "refuse the application for judgment pursuant to [Iowa Rule of Civil Procedure] 1.981(6) and allow [Miller] to perform the full extent of [their] discovery." However, that affidavit

was filed on August 26. A party resisting summary judgement must file a response within fifteen days of the moving party filing the summary judgment motion. Iowa R. Civ. P. 1.981(3). Miller timely filed his resistance on July 8. However, "[i]f affidavits supporting the resistance are filed, they *must* be filed with the resistance." *Id.* (emphasis added). Miller filed the supporting affidavit over six weeks after the resistance, well beyond what rule 1.981(3) commands. Because a lack of a rule 1.981(6) affidavit is sufficient to defeat a claim for a continuance, the district court did not abuse its discretion in proceeding to the merits of the summary judgment motion.

Even if we were to consider Miller's claim absent the affidavit, the court did not abuse its discretion. The district court, after discussing the lack of a rule 1.981(6) affidavit, ultimately held that Miller "had a full and fair opportunity to conduct discovery," due to the fourteen months Miller had available to conduct discovery. Drake's counsel swore in an affidavit that the school provided over 1300 pages of documents to Miller. Miller conducted a deposition of Drake's chief information technology officer. And Miller had ample time to conduct other discovery, such as depositions, interrogatories, or other record requests over the course of the fourteen months since the petition was filed.

Finally, to the extent Miller claims Drake improperly refused to comply with e-discovery requests, Drake's appropriate action would have been a motion to compel prior to summary judgment proceedings. *See* Iowa R. Civ. P. 1.517.

## V.     Whether an Issue of Material Fact Exists

Miller claims the court erred when the court granted summary judgment because the court acknowledged questions of material fact existed. The district

court expressly noted, "The question of whether a Drake University basketball coach instructed all the basketball players present at the incident to lie about the cause of plaintiff's injuries is unquestionably a factual issue that would not be appropriate for summary judgment." Yet the district court concluded summary judgment was appropriate because Miller could not establish a causal connection between the alleged conduct by the Drake coach and Miller's medical care.

We agree. It is true that "negligence cases do not ordinarily lend themselves to summary adjudication." *Virden v. Betts & Beer Const. Co.*, 656 N.W.2d 805, 807 (Iowa 2003). Causation is generally best left to a jury. *Id.* However, it may "be decided as a matter of law in an exceptional case." *Id.* Such an exceptional case exists when "the relationship between cause and effect nonetheless is so apparent and so unrelated to defendant's conduct that no reasonable jury could conclude defendant's fault was a proximate cause of plaintiff's injuries." *Id.* (citation omitted). A defendant is the proximate cause of the plaintiff's injuries when "the damages would not have occurred *but for* the defendant's negligence." *Id.* at 808.

Miller failed to present any evidence raising a fact question over causation. Police officers responded to the scene after a report of a gunshot or someone falling. An officer observed a bullet hole in the wall and found a bullet casing. First responders were aware a gunshot may have caused the injuries. More significantly, Miller's only support comes from his conclusory allegations in his pleadings implicating the Drake coach. Such is insufficient to resist summary judgment. *See Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007) ("A party resisting a motion for summary judgment cannot rely on the mere

assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented."). Miller has not presented any evidence that medical care was ever delayed, let alone what caused any alleged delay.[5] Indeed, Miller largely concedes he has failed to present enough evidence through his persistent requests for additional time to conduct discovery in order to obtain the evidence needed to press his claim. Because there is no genuine question of material fact related to causation, the district court properly granted summary judgment.

**AFFIRMED.**

---

[5] At oral arguments, counsel for Miller indicated both parties were in possession of Miller's medical records. They were not filed as part of the summary judgment proceeding and are not part of our record on appeal.